**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-11-02322-TUC-RCC |
| Plaintiff, | **ORDER** |
| v. | |
| George Ramirez, Jr., | |
| Defendant. | |

Before the Court is George Ramirez, Jr.'s *pro se* Request for Consideration of Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) (Doc. 294) and appointed counsel's Amended Motion for Relief Under 18 U.S.C. § 3582(c)(1)(A)(i) (Doc. 300). Ramirez, Jr. asks for early release because (1) his age and health conditions put him at an increased risk for suffering severe illness from COVID-19 (Doc. 294 at 2; Doc. 300 at 2); (2) he is not a safety risk to the community (Doc. 296 at 8–9; Doc. 300 at 23); (3) the conditions at his facility are insufficient for controlling the spread of the virus (Doc. 294 at 2; Doc. 296 at 5–7; Doc. 300 at 12–17); and (4) he has a plan to ensure a safe transition into the community upon release (Doc. 294 at 5; Doc. 300 at 24). The Court finds that Ramirez, Jr. has not sufficiently demonstrated the requisite extraordinary and compelling circumstances to warrant his early release and a reflection upon the relevant 18 U.S.C. § 3553(a) factors do not weigh in favor of the requested sentence reduction.

I.      *Procedural and Factual History*

After a jury trial, Ramirez, Jr. was convicted of Count 1: Conspiracy to Possess with

Intent to Distribute Marijuana and Cocaine, in violation of 21 U.S.C. § 846; Counts 2 and 3: Attempt to Possess with Intent to Distribute Marijuana and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(vii), and 18 U.S.C. § 2; and Count 4: Attempt to Possess with Intent to Distribute Cocaine and Aiding and Abetting, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2. (Docs. 148–51.) He was acquitted on the remaining counts. (Docs. 152–54.) On appeal, the Ninth Circuit remanded the case for resentencing, reducing the amount of cocaine that may serve as a basis for the sentence from 20 kilograms to 10 kilograms. (Doc. 255-1 at 3–4.)   On October 26, 2015, this Court resentenced Ramirez, Jr. to 240 months' imprisonment and, upon release from imprisonment, 10 years of supervised release. (Doc. 272 at 1.) He has been serving his sentence since the time of his arrest on June 4, 2011. (Doc. 300 at 4; Doc. 295 at 5.) He is currently incarcerated at the Federal Correctional Institution in Safford, Arizona ("FCI-Safford"). (Doc. 295 at 5–6.)

II.     *Standard of Review*

Ramirez, Jr.'s motions are brought under the compassionate release statute, 18 U.S.C. § 3582(c)(1)(A) as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. The statute provides that a court may modify a term of imprisonment upon a motion from the defendant when: (1) the defendant has exhausted his administrative remedies; (2) the court has considered the factors outlined in 18 U.S.C. § 3553(a); and (3) the court finds that (i) "extraordinary and compelling reasons warrant such a reduction," or that (ii) "the defendant is at least 70 years of age, has served at least 30 years in prison . . . [and] the defendant is not a danger to the safety of any other person or the community." 18 U.S.C. §§ 3582(c)(1)(A)(i)–(ii). A reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A).

III.     *Administrative Exhaustion*

A court may only reduce a term of imprisonment upon a motion for compassionate release by the defendant if he first exhausts his administrative remedies or at least thirty days lapse from the date the defendant requests that the warden file such a motion on his

behalf. 18 U.S.C. § 3582(c)(1)(A). A defendant fails to exhaust his administrative remedies "where he has requested the BOP to move for compassionate release on his behalf but seeks relief in a district court before the BOP has had thirty days to respond and there has been no adverse decision by the BOP for him to administratively exhaust within that time period." *United States v. Reyes*, No. 3:16-CR-227, 2020 WL 3415377, at *2 (M.D. Pa. June 22, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

The court has no jurisdiction to waive the exhaustion requirement where a defendant has not first exhausted his administrative remedies. *See, e.g.*, *Shaw v. Bank of America Corp.*, 946 F.3d 533, 541 (9th Cir. 2019) (quoting *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1197 (9th Cir. 1998) ("[S]tatutorily-provided exhaustion requirements deprive the court of jurisdiction . . . ."); *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001) (The courts should "not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

Here, Ramirez, Jr. recounts that he first requested that Acting Warden B. Auterson file a motion for compassionate release on his behalf via an email sent on April 17, 2020. (Doc. 294-1.) In an email to Unit Management that Ramirez, Jr. sent on April 24, 2020, he mentioned an email response he received from someone referred to as "AW Entzel" requesting specific documentation regarding Ramirez, Jr.'s health conditions. (Doc. 294-1 at 2.) There is no date provided for this response from AW Entzel, but based on the dates of the available documentation, this response occurred prior to April 24, 2020.

On May 8, 2020, Acting Warden B. Auterson signed a letter in response to Ramirez, Jr. denying his request, however, due to current policies restricting direct access to staff, Ramirez, Jr. did not receive the response until May 29, 2020 when Unit Manager Holloway delivered the letter. (Doc. 296 at 3; Doc. 296-1.) An apparent signature from Unit Manager Holloway on the response attests to this May 29, 2020 delivery. (Doc. 296-1.) Ramirez, Jr. filed his *pro se* motion on May 21, 2020. (Doc. 294.) He contends that his motion was appropriate because more than thirty days passed without a response from the time he first submitted his request to the time he filed his motion. (Doc. 296 at 2–3; Doc. 300 at 4.)

Ramirez, Jr. has also indicated that, following his *pro se* motion and later receipt of the warden's letter, he filed an administrative appeal (Form BP-9) with the Bureau of Prisons ("BOP"). (Doc. 296 at 3.) However, Ramirez, Jr. has not provided any additional information as to the status of that appeal.

The Court finds that Ramirez, Jr. did exhaust his administrative remedies. Based on the specific documentation provided to the Court, more than 30 days passed from when Ramirez, Jr. sent his original request on April 17, 2020 and his receipt of Acting Warden B. Auterson's response on May 29, 2020. Although Ramirez, Jr. may have received some other response from Assistant Warden Entzel, neither party has provided this email or any additional information as to its contents. Finally, despite the lack of information regarding Ramirez, Jr.'s administrative appeal, the Court looks at the fact that Ramirez, Jr. waited 30 days to file his motion and any administrative appeal would have commenced after this 30-day period.

IV.    *Extraordinary and Compelling Reasons*

Nevertheless, the Court finds that Ramirez, Jr. has not demonstrated that extraordinary and compelling reasons exist to warrant his early release. A court's reduction of a sentence under the compassionate release statute is extraordinary and reserved for "compelling circumstances which could not reasonably have been foreseen by the court at the time of sentencing." *See* 28 C.F.R. § 571.60 (2000). The U.S. Sentencing Commission explains that "extraordinary and compelling" reasons may exist if the defendant is suffering from a terminal illness or from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. 1(A). Alternatively, "extraordinary and compelling" reasons may exist based on age if the defendant is at least 65 years old, experiences "serious deterioration in physical or mental health," and has served at least 10 years or 75% of his sentence. USSG § 1B1.13, cmt. 1(B). However, reducing a sentence because of a medical issue is "a rare event." *United States v. Johns*, No. CR 91-392-TUC-CKJ, 2019 WL 2646663, at *2 (quoting *White*

*v. United States*, 378 F. Supp. 3d 784, 786 (W.D. Mo. May 9, 2019)).

The "mere existence" of COVID-19 is not enough alone to justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020); *see also United States v. Roeder*, 807 F. App'x 157, 160–61 (3d Cir. 2020) ("[T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence."). Some courts have found that COVID-19 is a compelling and unforeseeable circumstance, *United States v. Enos*, CR 19-2041-JAS (D. Ariz. Apr. 30, 2020); *United States v. Bothra*, No. 20-1364, 2020 WL 2611545 (6th Cir. May 21, 2020), and that the court has discretion to find extraordinary and compelling circumstances beyond the limited descriptions provided by the U.S. Sentencing Guidelines, *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219, at *3 (D. Md. Apr. 6, 2020).

Here, Ramirez, Jr. has not met his burden of sufficiently demonstrating extraordinary and compelling circumstances. Ramirez, Jr. relies on the fact that he has recently turned 49 (Doc. 300 at 18), he is within the medical definition of "obese" based on his Body Mass Index ("BMI") of 31.1 (Doc. 302 at 1), and his medical records indicate that he suffers from hypertension and hyperlipidemia. (Doc. 294-1 at 3–4.) He also contends he has high cholesterol (Doc. 294 at 2; Doc. 300 at 18), a "thyroid problem and has previously had a heart murmur" (Doc. 303 at 4). Both Ramirez, Jr. and the Government state that his cholesterol is above the healthy level of 200. (Doc. 300 at 18; Doc. 302 at 2.) Ramirez, Jr. has not provided information about medication, diet, or exercise prescribed to address his BMI, but his medical records do indicate that he is being prescribed hydrochlorothiazide and metoprolol. (Doc. 294-1 at 5, 8.) Generally speaking, these medications are used to treat high blood pressure. Ramirez, Jr. also alleges that the facility at FCI-Safford is not managing COVID-19, relying primarily on general data about prison conditions and their tension with maintaining social distancing. (Doc. 296 at 4–6; Doc. 300 at 12–17.) He does make the specific allegation that social distancing at FCI-Safford is particularly difficult and claims to have personal knowledge of individuals at the facility

"not conforming to the BOP and CDC guidance for the proper use of face coverings and other personal protective equipment." (Doc. 296 at 5–6.)  He also notes that two staff members at FCI-Safford have tested positive for the virus. (Doc. 300 at 17.)

The facts as Ramirez, Jr. has shown them do not constitute extraordinary and compelling circumstances stemming from a serious physical or medical condition that "substantially diminishes the ability of the defendant to provide self-care within the environment of the correctional facility and from which he or she is not expected to recover." USSG § 1B1.13, cmt. 1(A).

First, Ramirez, Jr.'s health conditions, as the records provided establish them, are not a serious medical condition when managed by appropriate medication. The CDC does not indicate that an age of 49, high cholesterol, and hyperlipidemia, without more, create an increased risk of severe illness. *CDC, Coronavirus Disease 2019 (COVID-19)*, *People at Increased Risk of Severe Illness: People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 30, 2020). Ramirez, Jr. has not provided specific documentation regarding his thyroid or heart issues. Furthermore, to the extent that hypertension and obesity are risk factors that might increase the likelihood of developing severe illness from COVID-19, these conditions can presumably be managed with medication, diet, and exercise.

Second, Ramirez, Jr. has not sufficiently alleged that the BOP is failing to properly manage his health conditions thereby "substantially diminish[ing] the ability of the defendant to provide self-care." USSG § 1B1.13, cmt. 1(A). Instead, he provided records that show he has been prescribed medication to manage his chronic illnesses, which is in line with the CDC's current recommendations for managing health-related risk factors. *CDC, Coronavirus Disease 2019 (COVID-19)*, *People at Increased Risk of Severe Illness: People With Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Aug. 30, 2020). Ramirez, Jr. has similarly failed to show that his health conditions could be managed

better, or would present less of a risk, were he released.

Finally, Ramirez, Jr. has not sufficiently alleged that FCI-Safford is failing to manage the spread of COVID-19. Although he provided information about two staff members who tested positive, he has not given specific statistics as to the number of inmates, if any, who have contracted the virus at FCI-Safford. As the Court understands it, the BOP has implemented various new procedures in response to COVID-19, and Ramirez, Jr.'s general information regarding prisons is not enough to demonstrate that FCI-Safford in particular has failed to take appropriate measures or that an outbreak has occurred preventing him from providing self-care to effectively manage his conditions.

V.     § 3553(a) Factors

Finally, courts are required to reflect upon the factors outlined in 18 U.S.C. § 3553(a) when considering a motion for compassionate release. 18 U.S.C. § 3582(c)(1)(A). These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant; the purposes of sentencing; the kinds of sentences available; the sentences and ranges established by the Sentencing Guidelines; relevant policy statements issued by the Sentencing Commission; the need to avoid unwarranted sentencing disparities among similarly situated defendants; and the need to provide restitution to victims." *United States v. Trujillo*, 713 F.3d 1003, 1008 (9th Cir. 2013).

Ramirez, Jr. claims that he is no longer a danger to the community and that the purposes of punishment and rehabilitation have been satisfied. (Doc. 296 at 9; Doc. 300 at 23.) He cites to the fact that he has been housed in low-security facilities as well as to his record of good behavior while incarcerated, his participation in various programming and jobs, and the completion of his GED. (Doc. 296 at 9; Doc. 300 at 23). He also asserts that he has a plan to safely transition into the community upon release because he has an unspecified job lined up, plans to stay with his father and benefit from the support of his family, and intends to study computer engineering. (Doc. 294 at 5; Doc. 296 at 9; Doc. 300 at 24.) Ramirez, Jr. also relies on the nature of his involvement in the events that form the basis for his present conviction, more specifically that he was not personally involved in

the physical violence that occurred. (Doc. 296 at 8.)

The Court finds that a reflection upon the relevant § 3553(a) factors does not weigh in favor of Ramirez, Jr.'s release.

### a. Nature and Circumstances of the Offense and History of Defendant

The nature and circumstances of the present offense, combined with Ramirez, Jr.'s criminal history, do not support early release. In addition to the present conviction, he has a significant criminal history including drug-related offenses and suspected incidents of domestic violence. (Doc. 261 at 8–14.) He has shown that he has difficulty following the law or, at the very least, avoiding individuals and situations involving unlawful activities. While his participation in anger management and related programming is positive, it is by no means a guarantee that he can employ these skills effectively upon release or that they would prevent him from engaging in future criminal conduct. Furthermore, although Ramirez, Jr. was not the individual who used a firearm to threaten the life of the SWAT team leader in the present offense, he was involved in the underlying activity that resulted in the violent situation that unfolded.

### b. Purposes of Sentencing and Sentencing Disparities

Additionally, the purposes of sentencing and the need to avoid sentencing disparities would not be accomplished by granting early release. Ramirez, Jr., having spent 110 months incarcerated, has served less than half of his sentence of 240 months. The completion of his GED and his other efforts at rehabilitation are commendable, but they are not enough to outweigh this fact. The reduction of Ramirez, Jr.'s sentence to less than half would not serve the purposes of sentencing and would create a sentencing disparity for similarly situated defendants.

### VI.   Conclusion

It is Ramirez, Jr.'s burden to show that extraordinary and compelling reasons exist to support his release and he has not done so. *See* 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Greenhut*, No. 18-CR-48-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020).

Accordingly, IT IS ORDERED George Ramirez, Jr.'s Amended Motion for Relief Under to 18 U.S.C. § 3582(c)(1)(A)(i) is DENIED. (Doc. 300.) Ramirez, Jr.'s *pro se* Request for Consideration of Sentence Reduction Pursuant to 18 U.S.C. § 3582(c)(1)(A) is DENIED as MOOT. (Doc. 294.)

Dated this 16th day of September, 2020.

Honorable Raner C. Collins
Senior United States District Judge